IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRNELL FARROW,                    )
                                    )
          Plaintiff,                )          No. 2:23-1086-RJC
                                    )
     v.                             )
                                    )
PITTSBURGH PUBLIC SCHOOLS,          )
                                    )
          Defendant.                )
                                    )

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

      Before the Court is the Motion to Dismiss (ECF No. 11) filed by Defendant Pittsburgh Public Schools in the above-captioned matter.  Defendant moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice each of the claims set forth against it in the Complaint (ECF No. 4) filed by Plaintiff Darrnell Farrow.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  Defendant's Motion to Dismiss has been fully briefed and is ripe for disposition.

### I.      Factual Background & Procedural History

      In his Complaint, Plaintiff asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Counts I and III) and a due process claim under 42 U.S.C. § 1983 (Count II).  Plaintiff sets forth the following factual allegations relevant to the Court's consideration of Defendant's Motion to Dismiss:

      Plaintiff was employed by Defendant as an education assistant at Perry High School during the timeframe relevant herein, and he possessed the qualifications to perform the essential functions of his position and other positions.  Compl. ¶¶ 1-3, ECF No. 4.  Plaintiff accepted employment with Defendant in March of 2019, when he was hired as a Paraprofessional I and head

football coach at Perry High School.  *Id.* at ¶¶ 8; 10, ECF No. 4.  At the time of his hiring, Plaintiff had four years of experience working as a Paraprofessional I and seven years of experience as a football coach.  *Id.* at ¶ 9.  Plaintiff's employment duties included assisting students with their studies and monitoring and escorting students, and his primary role involved monitoring in-school suspension.  *Id.* at ¶ 11.  Plaintiff and Defendant entered into an employment contract when Plaintiff was hired, and Plaintiff was a member of the PFT Union.  *Id.* at ¶ 13.

In September of 2021, Plaintiff was involved in a "physical encounter" with a Perry High School Student, H.N.,[1] while Plaintiff attempted to prevent a "major fight" among Perry High School students.  Compl. ¶ 14, ECF No. 4.  Prior to this altercation, Plaintiff was informed that H.N. had violent tendencies inside and outside of school, and that H.N. was a member of a gang who carried guns and was involved in shootings and murders within the local community.  *Id.* at ¶¶ 15; 17.  On the day of the altercation, Plaintiff was aware that H.N. had just returned to school from a three-day suspension for fighting.  *Id.* at ¶ 16.  Prior to the altercation., Plaintiff was informed that H.N. was traversing the school halls to fight other students.  *Id.* at ¶ 17.  Plaintiff intercepted H.N. and tried to redirect him.  *Id.*  H.N. "became violent to the Plaintiff," threatened Plaintiff's life three times, and made other implied and express threats by balling his fists and assuming a threatening position.  *Id.*

Citing a concern for his own safety and the safety of other students, Plaintiff physically restrained H.N.  Compl. ¶ 18, ECF No. 4.  Following this restraint, H.N. increased his aggression, and security and other staff eventually also had to physically restrain H.N.  *Id.* at ¶ 19.  Following the altercation, Plaintiff's superiors originally instructed Plaintiff to return to his classroom while administration resolved matters, but eventually instructed Plaintiff to leave the premises.  *Id.* at ¶¶

---

[1] Defendant has stated that the student identified by name in Plaintiff's filings is under the age of 18, and the Court thus refers to the student by the student's initials and has sealed Plaintiff's filings.

19[2]-20.  Plaintiff was not permitted to write an incident report and was subsequently suspended until further notice.  *Id*. at ¶ 20.

In an effort to intimidate Plaintiff, Defendant initiated a ChildLine[3] report regarding Plaintiff's altercation with H.N.  Compl. ¶ 21, ECF No. 4.  Plaintiff was not presented with an opportunity to present his side of the story to Defendant, and he was further not provided with an arbitration hearing, which is required by his employment contract, or a *Loudermill* hearing so that he could defend himself from "all accusations."  *Id.* at ¶ 22.  As a prominent individual in his community, Plaintiff felt humiliated and threatened by the claims of child abuse that were levied against him, and the same affected his reputation.  *Id.* at ¶ 23.

Plaintiff was afraid to return to his position due to H.N.'s previous threats against Plaintiff's life.  Compl. ¶ 24, ECF No. 4.  Because Defendant refused to provide protection or an accommodation to ensure Plaintiff's safety, Plaintiff became stressed and depressed, and he was "constructive[ly] discharged" from his employment with Defendant in December of 2022.  *Id.* at ¶ 24.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June of 2022.  *Id.* at ¶ 25.  On March 17, 2023, Plaintiff received a Determination of Charge (dismissing his charge) and Notice of Right to Sue ("Determination and Notice") from the EEOC.[4]  *Id.* at ¶ 26.

---

[2] The Court notes that Plaintiff labeled two of his paragraphs as "19."  For ease of reference, the Court will refer to the paragraphs as they appear in the Complaint, and will not renumber the paragraphs herein.

[3] "ChildLine is part of a mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns, and transmit the information quickly to the appropriate investigating agency." ChildLine, https://perma.cc/2TAY-UN5U, (last visited July 16, 2024).

[4] While Plaintiff alleges that he received the Determination and Notice on this date, the Court notes that the date of receipt is a contested issue.

Plaintiff is a black male.  Compl. ¶ 25[5], ECF No. 4.  Plaintiff suffered adverse employment action when he was removed from his classroom, suspended, and reprimanded for his actions in connection with the altercation with H.N.  *Id.* at ¶ 27.  Defendant did not discipline white employees or employees of other races who had similar "physical encounters" with students.  *Id.* at ¶ 29.  Defendant did not take H.N.'s threats to Plaintiff seriously, and it failed to provide a reasonable accommodation to ensure Plaintiff's safety.  *Id.* at ¶ 28.  Plaintiff asserts that his employment was constructively terminated because Defendant failed to take H.N.'s threats seriously, causing Plaintiff to fear for his life.  *Id.* at ¶ 30.

Plaintiff's union declined to represent Plaintiff following his termination.  Compl. ¶ 34, ECF No. 4.  Defendant "took advantage" of Plaintiff's lack of counsel, and denied Plaintiff due process.  *Id.* at ¶¶ 33-36.

Before the altercation with H.N., Plaintiff had "several issues" with his supervisor (the principal at Perry High School), and he characterizes his work environment as hostile due to these issues.  Compl. ¶ 39, ECF No. 4.  Plaintiff made several complaints to his supervisor related to "various issues" throughout the year (presumably 2022).  *Id.* at ¶ 40.  Plaintiff avers that the Perry High School principal utilized the incident with H.N. as a pretext to punish Plaintiff and destroy his career for protected activity, namely making complaints to his supervisor.  *Id.* at ¶¶ 41-42.

Plaintiff commenced this action by filing a Motion for Leave to Proceed in Forma Pauperis (ECF No. 1) on June 14, 2023.  The Court granted that Motion, and Plaintiff's Complaint was docketed on June 15, 2023.  Defendant filed its Motion to Dismiss, along with a Brief in Support

---

[5] Plaintiff again misnumbered the Complaint's paragraphs beginning on page 6 of the Complaint, under the heading "Count I."  Again, for ease of reference, the Court refers to the paragraphs as they are numbered in the Complaint, but notes that any further citations in this section of this Memorandum Opinion will reference only paragraphs set forth at pages 6-10 of the Complaint.

(ECF No. 12) and various exhibits, on January 9, 2024.  Plaintiff filed a Response in Opposition (ECF No. 14) to the Motion to Dismiss on February 1, 2024.

## II.       Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*  (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is also true where a plaintiff does not request leave to amend. *See Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to

dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

The Court notes that Plaintiff is proceeding pro se and, as such, he is entitled to liberal construction of his submissions in federal court. This means that the Court must liberally construe the factual allegations of the complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Further, pro se litigants are not free to ignore the Federal Rules of Civil Procedure. *Pruden v. Long,* Civ. A. No. 3:CV-06-2007, 2006 WL 3325439, *1 (M.D. Pa. Oct. 24, 2006).

## III.   Discussion

As noted, Defendant seeks dismissal of each of Plaintiff's claims with prejudice. Defendant first asserts that Count I (Title VII discrimination claim) and Count III (Title VII retaliation claim) are untimely due to Plaintiff's failure to file his Complaint within ninety (90) days of the EEOC's issuance of the Determination and Notice. Mot. ¶ 3, ECF No. 11. Defendant further argues that Plaintiff waived his retaliation claim by failing to exhaust his administrative remedies before the EEOC, and that Plaintiff's discrimination claim fails as a matter of law due to Plaintiff's voluntary resignation from his employment. *Id.* at ¶¶ 4-5. Defendant also argues that Plaintiff fails to allege facts sufficient to support a discrimination or retaliation claim under Title

VII or a Section 1983 claim for a violation of Plaintiff's right to due process under the Fourteenth Amendment. *Id* at ¶¶ 6-7.

Before addressing Defendant's individual arguments, the Court notes that Defendant has attached a number of exhibits to its Motion to Dismiss, which Defendant brings under Rule 12(b)(6), and not Rule 56 (whether primarily or in the alternative). Defendant clearly has not complied with the Local Rules governing the filing of motions for summary judgment, and further implies that it believes that the Court can consider the Motion to Dismiss and attached Exhibits under Rule 12(b)(6) without converting the Motion to Dismiss into a motion for summary judgment. *See* Br. in Supp. 5, ECF No. 12. ("In considering external yet undisputedly relevant and authentic documents, the court need not convert the motion to dismiss into a motion for summary judgment.").

The Court agrees with Defendant with respect to the EEOC documents attached to the Motion to Dismiss at ECF Nos. 12-8 through 12-11. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) ("It is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgment."); *see also McNaney v. Sampson & Morris Grp., Inc.*, No. 2:21-CV-1809, 2022 WL 1017388, at *2 (W.D. Pa. Apr. 5, 2022) ("Federal courts have held that EEOC documents attached to a defendant's motion to dismiss are reviewable without converting the motion to one for summary judgment because they are not subject to dispute as to their authenticity and issues relating to exhaustion and post-exhaustion timeliness form essential parts

of a plaintiff's claims.").  Pursuant to relevant authority, the EEOC documents may be considered by the Court in resolving Defendant's Motion to Dismiss under Rule 12(b)(6), either as undisputed documents referenced in the complaint or central to the plaintiff's claims, or as information that is a matter of public record, without converting the Motion to Dismiss to one for summary judgment.

The same cannot be said for the documents filed at ECF Nos. 12-1 through 12-7.  In the Court's estimation, the documents filed at ECF Nos. 12-1 through 12-7 are offered only to clarify or contradict the allegations set forth in Plaintiff's Complaint, and they are not documents that are indisputably authentic or otherwise integral to or explicitly relied upon by the Complaint. Accordingly, the Court cannot consider those documents in resolving Defendant's Rule 12(b)(6) motion.  *See Rogan*, 113 F. Supp. 2d at 783 ("The remaining submissions are neither referenced in the complaint nor essential to the plaintiff's claims, and we will not consider them here."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A]n exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996))).  Plaintiff has requested an opportunity to conduct discovery, *see* Resp. in Opp'n 10, ECF No. 14, and Defendant has not invoked Rule 56.  Accordingly, the Court will not convert the pending Motion to Dismiss into a motion for summary judgment, and the Court will not consider ECF Nos. 12-1 through 12-7 in resolving the Motion to Dismiss.

### A.  Failure to File Complaint Within Ninety (90) Days of Issuance of EEOC Decision

With respect to Title VII's exhaustion requirements and the deadline by which a plaintiff must file suit following EEOC action, the Honorable Marilyn J. Horan of this District has deftly explained:

Title VII sets forth administrative procedures that a plaintiff must exhaust with the EEOC prior to bringing a civil action in court. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). First, the plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Id.* at 469-70. The EEOC will then investigate the allegations in the charge. *Id.* at 470. Once the investigation is complete, the EEOC notifies the charging party that it has concluded its investigation and it issues a Right to Sue Letter. *Id. A plaintiff seeking to bring suit in court must file his or her complaint within ninety days of the date on which he or she "has notice of the EEOC's decision not to pursue the administrative charge." Id.*; *see also* 42 U.S.C. § 2000e-5(f)(1).

*Hayden v. Allegheny Health Network*, No. 2:21-CV-525, 2022 WL 783430, at *6 (W.D. Pa. Mar. 15, 2022) (emphasis added). An EEOC right to sue letter informs the claimant that they must file suit within ninety days of receipt of the letter, thus, the date of receipt is "critical." *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *see also* ECF No. 12-10. "When the actual date of receipt is known, that date controls." *Id.* In the absence of evidence of the date of receipt of the right to sue letter, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it."[6] *Id.*

"While the 90-day rule is not a jurisdictional predicate," it is "akin to a statute of limitations," and, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Paniconi v. Abington Hosp.-Jefferson Health*, 604 F. Supp. 3d 290, 291 (E.D. Pa. 2022) (quoting *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986). This issue may be resolved at the motion to dismiss stage. *See Wolfgramm v. Commc'n Workers of Am. Loc. 13301*, 525 F. Supp. 3d 556, 561 (E.D. Pa. 2021) ("Courts in this circuit have routinely dismissed discrimination claims based on a plaintiff's failure to file within 90 days after receiving a right to sue notice from the EEOC.").

---

[6] "Rule 6(e)'s three-day presumption attempts to ensure that the plaintiff has the benefit of the full ninety-day period when the date of actual receipt is unknown." *Seitzinger*, 165 F.3d at 239.

The Third Circuit has explained that, "[a]lthough the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that '[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.'" *Seitzinger*, 165 F.3d at 240 (3d Cir. 1999).  The general rule is that courts should apply equitable tolling sparingly.  *Id.* at 237.  Circumstances where equitable tolling may apply include: (1) where the plaintiff received inadequate notice of their right to file suit; (2) where a motion for appointment of counsel is pending; (3) where a court has misled the plaintiff into believing they had done everything required to file suit; (4) where the defendant has actively misled the plaintiff; (5) where the plaintiff "in some extraordinary way" was prevented from asserting their rights; or (6) where the plaintiff timely asserted their rights in the wrong forum.  *Id.* at 240.

In this case, the EEOC documents attached to the Motion to Dismiss tend to indicate that the EEOC sent an email to "darrnell.farrow@gmail.com" on January 30, 2023 stating that "a new document is available to download."   ECF No. 12-11 at 3.   The EEOC "Activity Log" for Plaintiff's EEOC claim indicates that the January 30, 2023 email was sent to an email address previously used by the EEOC to seemingly successfully communicate with Plaintiff. [7]  *Id.* at 4-6; 10-13.  This email address is also seemingly listed as Plaintiff's "Name" in the Activity Log.  *Id.*

---

[7] For example, the Activity Log indicates that Plaintiff submitted an amended charge on August 17, 2022.  ECF No. 12-9.  The EEOC Activity Log indicates that the EEOC successfully used the email address at issue to communicate with Plaintiff respecting his amended charge:

| 8/17/2022 11:05 | Charging Party signed Amended Charge of Discrimination. | darrnell.farrow@gmail.com |
|---|---|---|
| 8/17/2022 11:05 | Emailed  DARRNELL Farrow at darrnell.farrow@gmail.com that charge has been amended | darrnell.farrow@gmail.com |

ECF No. 12-11 at 10; *see also id.* at 11 (8/17/2022 11:01 "The Charging Party has Downloaded Document. Type: Amended Charge of Discrimination-draft").

at 14.  The "new document" referenced in the January 30, 2023 email appears to be a "Closure Notice/NRTS."[8]  *See* ECF No. 12-11 at 3-4.; *see also* ECF No. 12-10 (Determination and Notice dated January 30, 2023 and addressed to Plaintiff, but with actual address redacted).  An EEOC Activity Log entry for February 7, 2023 further provides: "Reminder email sent to [Plaintiff] at [email address] that Closure Notice/NRTS document is available to download."  ECF No. 12-11 at 3.  A March 17, 2023[9] Activity Log entry indicates that a document titled "Correspondence with Charging Party & FileName:2023-03-17 Ltr to CP re Closure Document-Not Downloaded 533-2022-02151.pdf" was uploaded by the EEOC.  *Id.* at 2.

The Court finds that the record tends to indicate that the Determination and Notice were available for download from the EEOC's online portal as of January 30, 2023.  It further indicates that the EEOC sent an email respecting the availability of a "new document" for download to an email address that had been used to communicate with Plaintiff in the past.  It also indicates that the EEOC sent a follow-up email to that email address on February 7, 2023 to remind Plaintiff that the Determination and Notice documents were available for download.  Given the averments in the Complaint and, in particular, the March 17, 2023 Activity Log entry, the Court believes it is also clear that, as of March 17, 2023, Plaintiff had not yet downloaded the Determination and Notice.

The question becomes: on what date did Plaintiff "receive" the Determination and Notice. Defendant argues that the date of receipt is January 30, 2023, the date that the EEOC sent an email stating that these documents were available for download.  While Plaintiff offers no true

---

[8] The Court believes that it is beyond question that "NRTS" stands for "Notice of Right to Sue."

[9] I.e., the date on which Plaintiff asserts that he received the Determination and Notice.

substantive argument in response to Defendant's position,[10] he alleges in his Complaint that he received the Determination and Notice on March 17, 2023, i.e., the date that the EEOC uploaded a document titled: "[Letter] to [Charging Party] re Closure Document-Not Downloaded."  Whether received by mail, email, or download, it is clear that Plaintiff "received" the Determination and Notice on March 17, 2023.  Plaintiff's Complaint and IFP Motion were filed within 90 days of March 17, 2023.

The Court begins by noting what it perceives might represent a shift in this Circuit in the case law interpreting materially similar issues.  Courts presented with similar circumstances to those presented herein have consistently interpreted the date of receipt to be the day that the claimant (or counsel) received an email stating that the EEOC had reached a determination on the claimant's charge and that a right to sue letter was available for download, regardless of whether the claimant (or counsel) read the email or accessed the right to sue letter on that date.  *See Gatter v. CEP Am.-Missouri, LLLP*, No. 4:23-CV-1532-SPM, 2024 WL 3100613, at *4 (E.D. Mo. May 23, 2024) ("In determining when the ninety-day clock begins, courts in cases involving digital delivery of a notice of final agency action, have uniformly held that the ninety-day filing window starts to run once a plaintiff and/or plaintiff's attorney is put on notice that there is a final agency decision, even if plaintiff and/or counsel do not actually receive or access the final decision until later." (collecting cases)).  In *McNaney v. Sampson and Morris Group, Inc.*, the Honorable William S. Stickman IV of this District held "that the 90-day period began to run . . . when the EEOC emailed counsel to notify him that a decision had been made in Plaintiff's case and provided him access to that decision."  *McNaney*, 2022 WL 1017388, at *3.  In that case, Plaintiff's counsel admitted to receiving the email on the date in question and admitted that it included a link to the

---

[10] By way of argument as to this issue, Plaintiff's Response merely provides: "The Defendant[] claim[s] [that] . . . Plaintiff's claim is untimely and did not state the date on the complaint, clearly the date is on the complaint."

right to sue letter.  *Id*.  The email provided: "EEOC has made a decision regarding charge number

533-2021-00911.  It is very important that you download and retain a copy of this document.  You

may review this decision by logging into the EEOC Respondent Portal." *Id.* at *4.  Judge Stickman

explained: "Counsel's failure to open the link and actually read the document does not toll the

commencement of the period, just as it would not if he simply failed to open mail delivered in the

traditional manner," and he dismissed Plaintiff's Title VII and ADEA claims with prejudice on

timeliness grounds.  *Id*.

Exceptionally recently, however, the United States Court of Appeals for the Third Circuit

addressed this exact issue in a July 19, 2024 precedential opinion in the case of *Hayes v. New

Jersey Dep't of Hum. Servs*.   In that case, the Third Circuit held that an EEOC staffer's email to

the plaintiff's lawyer and the uploading of a right to sue letter to the agency's online portal did not

provide sufficient notice to Hayes such that the statute of limitations began to run on her Title VII

claim.  *See Hayes v. New Jersey Dep't of Hum. Servs.*, No. 23-1829, 2024 WL 3464517, at *1 (3d

Cir. July 19, 2024).  With respect to the email at issue, the Third Circuit explained:

> On March 11, 2020, an EEOC investigator emailed Hayes's lawyer and said the
> agency's "[r]eview of the available evidence does not establish a violation of [Title
> VII]."  Accordingly, the investigator explained that "[the EEOC] will issue you a
> Dismissal and Notice of Rights [i.e., a right-to-sue letter], which will enable you to
> file suit in U.S. District Court within 90 days of your receipt of that Notice if you
> wish to pursue this matter further."  (Hayes's lawyer received and read the email
> the day the investigator sent it.)  The EEOC says it posted Hayes's right-to-sue
> letter to its online portal that same day, and a copy of the letter lists March 11 as
> the date mailed.

*Hayes*, 2024 WL 3464517, at *1 (citations omitted).  Hayes filed suit more than eight months after

her lawyer received the email, but less than 90 days after the lawyer had requested and received

an actual copy of the right to sue letter.  *Id*.

14

The Third Circuit explained in *Hayes* "that a communication from the EEOC will start the clock only if it is 'equivalent' to a right-to-sue letter." *Hayes*, 2024 WL 3464517, at *2 (citing *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116 (3d Cir. 2003)). "For a communication to be equivalent to a right-to-sue letter, it must be 'as comprehensive' as the letter and 'include an explanation of the start date' for the 90-day clock." *Id*. In analyzing the situation before it, the Third Circuit explained:

> We begin where the District Court ended: with the March 11 email to Hayes's lawyer. The email stated that the EEOC's "[r]eview of the available evidence does not establish a violation of [Title VII]." It then explained that the EEOC "will issue you a Dismissal and Notice of Rights, which *will* enable you to file suit in U.S. District Court *within 90 days of your receipt of that Notice* if you wish to pursue this matter further."

> Under *Ebbert*, this email was not equivalent to the right-to-sue letter and was therefore insufficient to start the 90-day clock. In that case, we analyzed a phone call in which an EEOC employee told the plaintiff that her charge of discrimination would be dismissed. We held that "oral notice can suffice to start the 90-day period" but that it "must be equivalent to written notice." The phone call at issue there was not equivalent to a right-to-sue letter because "no evidence show[ed] that [the plaintiff] was told or otherwise knew the 90 days would start running from the date of the conversation," rather than upon "receipt of a letter . . . subsequently sent." The March 11 email here is deficient for the same reason: it never said that the 90-day clock had started. Instead, it said that a right-to-sue letter was forthcoming, and that the limitations period would commence when the letter was subsequently sent.

*Id.* at *3 (citations omitted).

With respect to the EEOC's upload of the right to sue letter to its online portal, the Third Circuit explained:

> The same day that the EEOC investigator emailed Hayes's lawyer, the agency uploaded the right-to-sue letter to its online portal. We have not yet addressed whether such an action suffices to start the 90-day clock. Under the circumstances here—where the upload was not accompanied by a direct communication to the plaintiff or her lawyer—we hold that it does not.

> The statute commands that the EEOC "shall . . . notify the person aggrieved" and ties the 90-day period to "the giving of such notice." 42 U.S.C. § 2000e-5(f)(1).

Although we do not demand that notice take a "specific form," *Ebbert*, 319 F.3d at 116, we do require some affirmative act of communication from the EEOC to the plaintiff or her lawyer. *See, e.g., Seitzinger*, 165 F.3d at 239 (letter); *Ebbert*, 319 F.3d at 116 (phone call). This requirement helps "strike[ ] a fair[ ] balance between a defendant's interest in a quick resolution of charges . . . and a plaintiff's interest in having adequate opportunity to bring suit and a clear understanding of when and where to do so." *Ebbert*, 319 F.3d at 116; *see also DeTata v. Rollprint Packaging Prods. Inc.*, 632 F.3d 962, 970 (7th Cir. 2011) (analyzing the notice requirement in light of the short length of the 90-day filing period).

Here, no evidence suggests that Hayes or her lawyer received any notification that the right-to-sue letter had been posted to the portal. *See Lax v. Mayorkas*, 20 F.4th 1178, 1182–83 (7th Cir. 2021) (holding that the 90-day period began when the plaintiff received and read an email stating that the right-to-sue letter was available). Nor did the EEOC investigator who emailed Hayes's lawyer on March 11 instruct him to check the portal for the letter. Hayes and her lawyer therefore received no communication informing them that the right-to-sue letter had been issued and that the filing period had begun. Under these circumstances, the posting of the right-to-sue letter to the EEOC's online portal did not start the 90-day clock.

*Hayes*, 2024 WL 3464517, at *3–4.

Under the precedential holding in *Hayes*, the Third Circuit has reiterated its holding in *Ebbert* that the 90-day clock can start only where the notice/email/communication at issue is a right to sue letter or equivalent to a right to sue letter, i.e., where it provides an equivalent level of notice that a right to sue letter itself provides. *See* ECF No. 12-10 at 1 (right to sue letter providing: "This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different."). This is true regardless of whether the claimant is represented by counsel or proceeding pro se. *Hayes*, 2020 WL 3464517, at *3.

Accordingly, under *Hayes*, an EEOC email will alone serve as sufficient notice under Title VII when that email informs the claimant or the claimant's representative that a final decision on the claimant's charge has been rendered and that the 90-day filing window has commenced. *See id.* at *3 ("The March 11 email here is deficient for the same reason: it never said that the 90-day clock had started."). It seems to this Court that, had the EEOC sent both its original email, which explained that the right to sue letter was forthcoming and that it would enable Hayes to file suit within 90 days of receipt of the letter, and contacted the plaintiff or her lawyer to inform one or both of them that the right to sue letter was available, Hayes would have been deemed to have received sufficient notice. Because Hayes's lawyer only received notice that the right to sue letter was *forthcoming*, the notice was not equivalent to a right to sue letter and was thus insufficient.

Further, it seems that, under *Hayes*, if the EEOC uploads a right to sue letter to its online portal, the EEOC must also inform the claimant or the claimant's representative explicitly that a right to sue letter was uploaded and that the 90-day filing window has commenced. *See id.* at *4 ("Hayes and her lawyer therefore received no communication informing them *that the right-to-sue letter had been issued and that the filing period had begun*. Under these circumstances, the posting of the right-to-sue letter to the EEOC's online portal did not start the 90-day clock." (emphasis added)). For this reason, the Third Circuit's holding in *Hayes*, in this Court's estimation and despite the Third Circuit's citation to *Lax v. Mayorkas*,[11] may call into doubt the continued persuasive weight of the case law relied upon by Defendant in this case.[12] The Court believes that

---

[11] Which held that a claimant's receipt of an email that informed the claimant that an agency decision had been rendered and attached a password-protected right to sue letter was sufficient notice. *Lax v. Mayorkas*, 20 F.4th 1178, 1180–83 (7th Cir. 2021).

[12] In particular, the notice in *Paniconi* was a single EEOC email to counsel stating only that an "important document" was available for download, with no specific mention of the client's name or that a right to sue letter had been issued on the client's charge. *Paniconi*, 604 F. Supp. 3d at 292. Again, this Court interprets *Hayes* to require a communication informing the claimant and/or counsel that a decision had been rendered, "that the right-to-sue letter had been issued[,] and that the filing period had begun." *Hayes*, 2020 WL 3464517, at *4.

*Hayes* stands for the proposition that it is not enough that an email merely informs the claimant or counsel that a "new document" is available for download.  Rather, under this Court's reading of *Hayes*'s and *Ebbert*'s equivalent-notice requirement, any email must also explicitly inform the interested party that the document available includes a right to sue letter and that 90-day clock to file suit is implicated by that document.  *See Hayes*, 2024 WL 3464517 at *2 n.4 ("Our equivalent-notice requirement aligns with the EEOC's implementing regulations, which provide that the agency's 'determination shall inform the person claiming to be aggrieved . . . of the right to sue in Federal district court within 90 days of receipt of the determination.'  29 C.F.R. § 1601.19(a); *see also id.* § 1601.28(e) ('The notice of right to sue shall include . . . [a]uthorization to the aggrieved person to bring a civil action under title VII . . . within 90 days from receipt of such authorization[.]'"); *see also id.* ("Under the statute, the 90-day clock begins 'after the giving of . . . notice' that the EEOC has dismissed the charge of discrimination *and* that a suit may be brought." (emphasis added)).

The Court acknowledges that its reading of *Hayes* on the uploading issue, an issue of first impression for the Third Circuit, may ultimately prove to be an overly cautious and literal one.  It could be that the Third Circuit's decision turned only on the fact that the EEOC provided *no* notice that a document had been uploaded, and that the March 11 email simply stated that a right to sue letter was *forthcoming*.  Had the EEOC uploaded the right to sue letter and simply emailed the claimant or counsel that a "new document" (absent the March 11 email's explanation that the EEOC had determined that the evidence did not establish a Title VII violation and its explanation of the effect that a right to sue letter would have) had been uploaded to the EEOC's online portal,

perhaps the Third Circuit would have found sufficient notice. That, however, was not the situation presented in *Hayes*.[13]

In this case, it appears that Plaintiff *may* have received an email on January 30, 2023 stating that "a document is available for download." Such an email certainly falls well short of equivalent notice. That said, the email itself *presumably*[14] provides access to actual notice. Further, that a claimant might receive such an email and simply not click the link to the right to sue letter is akin to a claimant receiving a nondescript envelope with an EEOC return address and simply ignoring it. In such a situation, a court would, in the absence of a basis for tolling or evidence respecting receipt, calculate the date of receipt to be three days after the EEOC mailed the letter. *See McNaney*, 2022 WL 1017388, at *4 ("Counsel's failure to open the link and actually read the document does not toll the commencement of the period, just as it would not if he simply failed to open mail delivered in the traditional manner."). The mere fact that a claimant is informed that an "important document" is presently available to the claimant, regardless of the claimant's appreciation (or lack thereof) of the specific nature of that document, may ultimately constitute sufficient notice. Again, *Hayes* at least implies potential agreement with such a holding. That said, the holding in *Hayes* also seems, both explicitly and in spirit, to indicate that something more is required, specifically that, where a right to sue letter is uploaded to an online portal, the EEOC provide a communication informing the claimant and/or counsel that a decision has been rendered, that a right-to-sue letter has been issued, and that the filing period has begun. *Hayes*, 2020 WL 3464517, at *4.

---

[13] The Court also acknowledges that the March 11 email was considered separately from the uploading of the right to sue letter. The email at issue involved "equivalent notice," whereas the right to sue letter itself constituted what this Court might describe as "actual notice."

[14] As discussed below, Defendant has not submitted a copy of the email with its Motion to Dismiss.

Notwithstanding the Court's discussion above, the Court notes that, even absent the recent decision in *Hayes*, Defendant has not sufficiently established at this juncture that Plaintiff *received* the emails at issue.[15]   While the EEOC apparently sent emails to Plaintiff's email address on January 30, 2023 and February 7, 2023, Plaintiff has alleged that he did not receive notice of the EEOC's decision until March 17, 2023.   Unlike the situations presented in the cases cited by Defendant, Plaintiff has not admitted to receiving the emails at issue.   This alone could justify denying the Motion to Dismiss as to its timeliness arguments.   *See Miller v. City Mission*, No. 2:23-CV-834, 2023 WL 9002732, at *4 (W.D. Pa. Dec. 28, 2023) ("Ms. Miller's allegations that she never received an email or physical letter that contained the right-to-sue letter, distinguish her circumstances from the cases argued by City Mission.   At this stage, assuming the alleged facts as true, Ms. Miller has alleged sufficient facts that she did not 'receive' the right-to-sue letter until February 16, 2023."); *see also Hayes*, 2024 WL 3464517, at *4 ("Here, no evidence suggests that Hayes or her lawyer *received* any notification that the right-to-sue letter had been posted to the portal." (emphasis added)); *Marable v. Oaks Integrated Care, Inc.*, No. 22-CV-6168 (RMB-EAP), 2024 WL 1406648, at *6 (D.N.J. Apr. 2, 2024) ("But the email does actually have to hit the plaintiff's or his representative's inbox.").   In this case, it is far from clear that the emails "hit Plaintiff's inbox."

Further, and importantly, the Court has only the benefit of review of the EEOC Activity Log describing, and potentially editorializing, the emails at issue, and not the actual emails themselves.   The record in this case is sparser than any this Court has reviewed.   This alone would have warranted outright denial prior to *Hayes*, but particularly so following the Third Circuit's

---

[15] "If the employer in an ADA case asserts an affirmative defense, like the expiration of the statute of limitations as DaimlerChrysler did in this case, then the burden of proof for that defense rests solely on the employer."   *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003)

decision in *Hayes*.  In this case, it appears that Plaintiff *might* have received a January 30, 2023

email stating that a "new document is available to download" and a February 7, 2023 "reminder

email . . . that [a] Closure Notice/NRTS document is available to download."[16]  ECF No. 12-11 at

3.  Further, under *Hayes*, even assuming these descriptions are accurate and that Plaintiff received

the emails, which has not been established, the Court could not dismiss Plaintiff's claims, as the

descriptions do not state that the emails explained that an agency decision was rendered or that the

filing period had begun.  It also bears noting that it does not appear that the right to sue letter was

ever mailed to Plaintiff outside of the emails at issue, at least prior to March 17, 2023.

On this record, the Court cannot dismiss Plaintiff's claims on timeliness grounds.

Accordingly, the Motion to Dismiss will be denied to the extent that it asserts that Plaintiff's claims

should be dismissed as untimely.  This issue may be revisited at the summary judgment stage, if

appropriate.

### B.  Failure to Exhaust Administrative Remedies – Title VII Retaliation Claim

Exhaustion of administrative remedies is "an essential element for bringing a claim in court

under Title VII."  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir.

2001).  To preserve a claim, a plaintiff must file a charge with the EEOC within 300 days of the

alleged unlawful employment practice.  *Hayden*, 2022 WL 783430, at *6.  "After a plaintiff

receives a Right to Sue Letter from the EEOC, the scope of a resulting private civil action is

'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of

the charge of discrimination.'"  *Id.* at *8 (quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 963 (3d

Cir. 1978)).  "In order to include a claim in the district court action that was not included in the

---

[16] While it is clear to the Court that "NRTS" means "Notice of Right to Sue," the Court cannot dismiss Plaintiff's claims without knowledge of the actual content of this email, including whether it explained that an agency decision had been rendered and its actual description of the documents available for download.

original EEOC charge, there must be a 'close nexus' between the facts alleged in the administrative charge and any newly raised claim." *Id.* "Although this standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form, it does prevent a plaintiff from 'greatly expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge.'" *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks*, 572 F.2d at 967).

Defendant argues that "Plaintiff did not check the retaliation box on either his Charge or Amended Charge[,]" and that "[h]e did not allege any facts to support or infer a retaliation charge." Br. in Supp. 9, ECF No. 12. While succinctly presented, the Court agrees with Defendant's argument, which Plaintiff does not address in his Response. "To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). Even the most liberal reading of Plaintiff's charge and amended charge with the EEOC would not support either the first or third elements of a retaliation claim, and he thus failed to exhaust his administrative remedies before filing suit in this Court.

In support of his retaliation claim, Plaintiff alleges that, before the altercation with H.N., Plaintiff had "several issues" with his supervisor, which he asserts resulted in a hostile work environment. Compl. ¶ 39, ECF No. 4. Plaintiff further alleges that he made several complaints to the principal of Perry High School related to "various issues" throughout the year (presumably 2022). *Id.* at ¶ 40. Plaintiff avers that the Perry High School principal utilized the incident with

H.N. as a pretext to punish Plaintiff and destroy his career for protected activity, namely making complaints to his supervisor.  *Id.* at ¶¶ 41-42.

As Defendant notes, Plaintiff did not check the "retaliation box" on either of his charges before the EEOC.  More importantly, Plaintiff did not make mention, whatsoever, of his purported prior complaints to his supervisor in either charge.  Rather, his original and amended charges speak only to Plaintiff's conduct during the H.N. altercation, and his assertion that he was treated differently than other employees based upon his race as a result of the incident.  This is not a scenario where a retaliation claim based upon prior employee-to-employer complaints could reasonably be inferred from the allegations set forth in the EEOC charge.  *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) ("The discrimination and retaliation claims were alternative allegations regarding the employer's failure to promote the plaintiff, and the facts supporting the former allegation were the same as those supporting the latter."  (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984))).  The facts supporting Plaintiff's retaliation claim are divorced entirely from those supporting his discrimination claim.  Because Plaintiff did not file a charge with the EEOC respecting retaliation arising from Plaintiff's prior complaints to his supervisor with 300 days of the alleged retaliation, any claim for retaliation has been waived.  Amendment as to Plaintiff's Title VII retaliation claim would be futile, and Count III will thus be dismissed with prejudice.

### C.  Impact of Purported Voluntary Resignation on Title VII Claims

Defendant's argument as to voluntary resignation is entirely premature, as it relies entirely on documents and factual assertions that this Court cannot consider in the context of a motion to dismiss.  This issue is one that is much more appropriately addressed at the summary judgment stage of litigation, as evidenced by the fact that the case law cited by Defendant involved motions

for summary judgment or motions for judgment following trial.  The Motion to Dismiss will be denied to the extent it seeks dismissal of Plaintiff's claims on the grounds of voluntary resignation.

### D.  Has Plaintiff Stated a Claim?

#### 1.  Discrimination Under Title VII

To succeed on a Title VII claim for discrimination, a plaintiff must show that 1) they are a member of a protected class, 2) they were qualified for the position they sought to attain or retain, 3) they suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).  In arguing that Plaintiff fails to state a claim for discrimination, Defendant again relies on documents and factual assertions that cannot be considered at this juncture, premature argument, and mostly inapt citation to cases that were decided at the summary judgment phase.

Defendant acknowledges that Plaintiff is a member of a protected class, was qualified for his position, and that he suffered adverse employment action.  Br. in Supp. 11, ECF No. 12.  In arguing that Plaintiff has not alleged facts sufficient to give rise to an inference of discrimination, Defendant argues:

> Plaintiff initiated an altercation with a student that escalated to the use of excessive force and risked seriously injuring the student. . . . Between the prior performance issues, the use of excessive force against a student, regardless of the minor's propensity for violence, and lying, Defendant PPS was justified in disciplining Plaintiff, including termination.

*Id*.  This characterization of the incident at issue and Plaintiff's termination is clearly one that Defendant believes will ultimately be supported by *the evidence*. This characterization is clearly not, however, an accurate characterization of the *factual allegations* in the Complaint.  Plaintiff's Complaint describes the altercation with H.N. differently, and it does not speak to "prior

performance issues" or include allegations respecting Plaintiff having "lied" to Defendant.  To the extent that the Motion to Dismiss contains factual averments outside of the four-corners of the Complaint and the EEOC documents attached to the Motion to Dismiss, it must be denied.

Defendant also argues that Plaintiff fails to allege facts sufficient to support his assertion that he was treated less favorably than a similarly situated employee not in his protected class, and that he fails to identify any comparators that were treated more favorably.  Br. in Supp. 11, ECF No. 12.  The Court acknowledges that Plaintiff's Complaint alleges in conclusory fashion that Defendant did not discipline white employees or employees of other races who had similar "physical encounters" with students.  *See* Compl. ¶ 29, ECF No. 4.  That said, the EEOC documents submitted by Defendant do set forth allegations of a comparator, Plaintiff's supervisor. In both Plaintiff's original and amended charge before the EEOC, Plaintiff alleges that his supervisor, who is white, was involved in a similar physical altercation with a student, and that, while suspended, that individual was eventually reinstated and offered training.  ECF Nos. 12-8 and 12-9.  Plaintiff asserts that he was not offered the same opportunity.  *Id.*  Thus, Defendant is incorrect that Plaintiff has not identified a comparator or alleged facts tending to show disparate treatment.  For these reasons, the Motion to Dismiss will be denied as to Plaintiff's Title VII claim for discrimination.

### 2.  Retaliation Under Title VII

The Court has dismissed Plaintiff's retaliation claim due to Plaintiff's failure to exhaust administrative his remedies, and the Court will thus not address the merits of Count III herein.

### 3.  Section 1983 Due Process

Defendant interprets Plaintiff's due process claim as one asserting a procedural due process claim.  Upon review of both the Complaint and Plaintiff's Response, it is clear that Plaintiff takes

issue with the fact that he did not receive an opportunity to present his side of the story or a hearing prior to his termination.  Accordingly, the Court agrees that Plaintiff has asserted a procedural due process claim.  *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 433 (E.D. Pa. 2011), aff'd, 476 F. App'x 282 (3d Cir. 2012) ("Procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quoting *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003))).

Section 1983, enacted as part of the Civil Rights Act of 1871, establishes "a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights." *Burella v. City of Philadelphia,* 501 F.3d 134, 139 (3d Cir. 2007) (quotations omitted).  To obtain relief under § 1983, Plaintiff must make a two-prong showing: (1) that she suffered a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law.  *See Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted).

Turning to Defendant's arguments, the Court again finds the Motion to Dismiss to be premature with respect to Plaintiff's Section 1983 claim.  With respect to this claim in particular, Defendant relies entirely on documents and factual assertions beyond the scope of this Court's review in arguing that Plaintiff cannot establish constructive discharge.  *See* Br. in Supp. 14-15, ECF No. 12 ("The Statement of Charges letter shows that Plaintiff was not constructively discharged and he was given procedural due process.").  Plaintiff has set forth sufficient factual allegations to survive a motion to dismiss his procedural due process claim, and the argument set forth by Defendant is more appropriately considered at the summary judgment stage.  The Motion to Dismiss will be denied as to Plaintiff's Section 1983 claim arising out of an alleged violation of his procedural due process rights.

26

27

**IV.      Conclusion**

For the reasons discussed above, the Court will grant in part and deny in part Defendant's

Motion to Dismiss, as discussed herein.  An appropriate Order of Court follows.

BY THE COURT:


*/s/Robert J. Colville*
Robert J. Colville
United States District Judge


DATED: July 25, 2024

cc:      All counsel of record

Darnell Farrow
1603 Worthington Street
Pittsburgh, PA 15206